IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEMETRIA ADAMS,                          §
                                         §
          Plaintiff,                     §
                                         §
v.                                       §        CIVIL ACTION NO. H-13-3796
                                         §
CAROLYN W. COLVIN,                       §
ACTING COMMISSIONER OF THE               §
SOCIAL SECURITY ADMINISTRATION,          §
                                         §
          Defendant.                     §


## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the court[1] is Defendant's Motion for Summary
Judgment (Doc. 10).  Defendant's motion is deemed unopposed because
the submission date has passed and Plaintiff has not filed a
response.[2]  The court has considered the motion, the administrative
record, and the applicable law.  For the reasons set forth below,
the court **RECOMMENDS** that Defendant's motion be **GRANTED**.

### I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for
judicial review of an unfavorable decision by the Commissioner of
the Social Security Administration ("Commissioner" or "Defendant")
regarding Plaintiff's claim for supplemental security income

---

[1]     This case was referred to the undersigned magistrate judge pursuant
to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the
Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 5.

[2]     <u>See</u> S.D. Tex. R. 7.3, 7.4.  The deadline for Plaintiff's response was
August 22, 2014.  To date, Plaintiff has not responded to Defendant's motion.

("SSI") benefits under Title XVI of the Social Security Act ("the Act").

A.  **Factual History**

Plaintiff was born on July 14, 1978, and was thirty-two years old at the alleged onset of her disability.[3]

Plaintiff's medical history prior to the alleged onset date includes diagnoses of Human Immunodeficiency Virus ("HIV") and asthma.[4]  Plaintiff was first diagnosed with HIV in 1998.[5]  Prior to the onset date, her HIV was asymptomatic.[6]

Plaintiff protectively applied for disability benefits on February 25, 2012, claiming an inability to work due to bipolar disorder, depression, schizophrenia, asthma, HIV, hypertension, and hip problems.[7]  In her application, she claimed she became disabled on October 1, 2010.[8]  The relevant period for determining Plaintiff's disability status is the period from February 25, 2012, through the date of the ALJ's decision.[9]

B.  **Medical History**

---

[3]      See Tr. of the Admin. Proceedings ("Tr.") 140.

[4]      See Tr. 254.

[5]      See Tr. 40.

[6]      See Tr. 237.

[7]      See Tr. 117-24, 143.

[8]      See Tr. 157.

[9]      The claimant cannot receive payment for SSI for any time prior to the application, regardless of the length of the disability. 20 C.F.R. § 416.335; Brown v. Apfel, 192 F.3d 492, 495 n. 1 (5th Cir.1999).

2

On February 28, 2012, Plaintiff visited Thomas Street Community Center ("Thomas Street") regarding HIV and hip pain.[10] Plaintiff's CD4 cell count was twenty-three percent, and Karen J. Vigil, M.D., ("Dr. Vigil"), discussed the need to begin high active antiretroviral therapy ("HAART") and provided forms for the Texas AIDS Drug Assistance Program ("ADAP").[11] Dr. Vigil conducted a computed tomography ("CT") scan of Plaintiff's hip and found it was "normal," prescribed Vicodin to treat Plaintiff's pain, and referred Plaintiff to Rheumatology to assess treatment options.[12]

On March 8, 2012, Plaintiff visited Thomas Street, where she was seen by a physical therapist.[13] On April 5, 2012, Plaintiff met with the Thomas Street eligibility department.[14] On April 6, 2012, Plaintiff visited Ben Taub General Hospital, ("Ben Taub") where she received a pelvic ultrasound.[15] On April 10, 2012, Plaintiff visited Thomas Street to gain updated lab information regarding her HIV.[16]

On April 20, 2012, Plaintiff received a consultive mental

---

[10]    See Tr. 217.

[11]    See Tr. 218.

[12]    See id.

[13]    See Tr. 857.

[14]    See Tr. 855.

[15]    See Tr. 853.

[16]    See Tr. 849.

examination conducted by Sharon Swanson, Psy.D. ("Dr. Swanson").[17] Plaintiff complained that she suffered from bipolar disorder and depression.[18] Plaintiff reported that for the previous six months she had been "manic" and had struggled with concentration, while also stating that she frequently felt depressed and wanted to "sleep all day."[19] Plaintiff stated that she had temper outbursts and crying spells, and that she had been unable to do household chores.[20] Plaintiff reported that she was currently taking Zoloft and that in 2010 she had "grazed her wrist" without requiring hospitalization, but denied current suicidal or homicidal ideation.[21] Plaintiff indicated to Dr. Swanson that she was too scared to date because of her HIV diagnosis.[22] Plaintiff reported that she did not follow a particular morning schedule and that she slept often.[23] Plaintiff stated that she was able to cook her own meals, but her mother handled her finances and went shopping for her.[24]

Dr. Swanson rated Plaintiff's hygiene as adequate and reported

---

[17]    See Tr. 260.

[18]    See id.

[19]    See id.

[20]    See Tr. 261.

[21]    See id.

[22]    See id.

[23]    See Tr. 262.

[24]    See id.

that Plaintiff was oriented to person, place and time.[25] Dr. Swanson observed that Plaintiff had normal thought processes without evidence of delusions or paranoid thinking.[26] Dr. Swanson reported that Plaintiff presented a depressed mood with low self-esteem, self-worth, and confidence.[27] Dr. Swanson graded Plaintiff's cognition "below average," as she was unable to count by sevens or threes.[28] Dr. Swanson rated Plaintiff's memory as adequate.[29]

Dr. Swanson rated Plaintiff's Global Assessment of Functioning ("GAF") as a 58, and opined that Plaintiff had a "moderate prognosis of maintaining employment."[30] Dr. Swanson recommended that Plaintiff seek psychiatric therapy to treat her depression.[31]

In a Function Report completed on April 23, 2012, Plaintiff described her daily activities.[32] She indicated that she could not concentrate and tired easily.[33] Plaintiff stated that she often slept during the day and that her "mind races" at night, preventing

---

[25] See Tr. 264.

[26] See id.

[27] See id.

[28] See id.

[29] See id.

[30] See Tr. 265.

[31] See id.

[32] See Tr. 157-64.

[33] See Tr. 157.

her from sleeping normally.[34]  She indicated that she was able to prepare "junk food" "once [in] awhile," and that she ate less as a result of her condition.[35]  Plaintiff reported that she was able to sweep and wash dishes, but that she required encouragement.[36] Plaintiff indicated that she rarely left the house, but was able to drive and shop independently.[37]

Plaintiff listed watching television as her hobby, and noted that she enjoyed being alone because people "got on [her] nerves."[38] Plaintiff reported that as a result of her conditions, she did not feel like going anywhere.[39]

Plaintiff alleged that her impairments affected her ability to understand, get along with others, talk, hear, and complete tasks, and have negatively affected her memory and concentration.[40]  She indicated that she struggled to pay attention and could not follow spoken instructions.[41]  Plaintiff reported that she did not handle stress effectively, did not like change, and was frequently angry.[42]

---

[34]    See Tr. 158.

[35]    See Tr. 159.

[36]    See id.

[37]    See Tr. 160.

[38]    See Tr. 161.

[39]    See Tr. 162.

[40]    See id.

[41]    See id.

[42]    See Tr. 163.

On May 21, 2012, Janice Ritch, Ph.D., ("Dr. Ritch"), completed a psychiatric review technique evaluating Plaintiff's mental impairments.[43] Dr. Ritch opined that Plaintiff's mood disorder resulted in a mild restriction in daily living and moderate restrictions in maintaining social functioning and maintaining concentration, persistence, or pace.[44] Dr. Ritch noted that Plaintiff had no episodes of decompensation.[45] Dr. Ritch opined that Plaintiff's medical history indicated that her symptoms did not compromise her ability to function independently and appropriately on a sustained basis.[46]

Also on May 21, 2012, Kelvin Samaratunga, M.D., ("Dr. Samaratunga"), evaluated Plaintiff's physical claims, including HIV, hip arthralgia, and asthma.[47] Dr. Samaratunga found that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds.[48] He opined that Plaintiff could stand and walk for up to six hours and sit for up to six hours in a normal eight-hour workday.[49] In his notes, Dr. Samaratunga wrote that Plaintiff's HIV was without opportunistic infection, Plaintiff's asthma was stable

---

[43] See Tr. 266-78.

[44] See Tr. 276.

[45] See id.

[46] See Tr. 278.

[47] See Tr. 280-87.

[48] See Tr. 281.

[49] See id.

and did not require emergency room visitations, and there was no significant functional limitations resulting from Plaintiff's hip arthralgia.[50]

On June 25, 2012, Plaintiff visited Thomas Street's rheumatology clinic.[51] Plaintiff continued to complain of hip pain, and told John D. Reveille, M.D. ("Dr. Reveille"), that previous CT scans showed "degenerative changes."[52] An x-ray of Plaintiff's hip revealed no acute displaced fracture or misalignment, although degenerative changes of sacroiliac joints were observed.[53] Additionally, doctors observed calcified pelvic phleboliths overlying the pelvis.[54] Dr. Reveille oversaw a steroid injection to treat Plaintiff's pain and requested a magnetic resonance imaging scan ("MRI") to further evaluate Plaintiff's hip.[55]

On June 28, 2012, Plaintiff was examined by Dr. Vigil regarding Plaintiff's HIV.[56] Dr. Vigil found that Plaintiff's CD4 cell count had fallen to eighteen percent.[57] Handwritten notes

---

[50]    See Tr. 285.

[51]    See Tr. 333.

[52]    See id.

[53]    See Tr. 347.

[54]    See id.

[55]    See id.

[56]    See Tr. 302.

[57]    See id.

indicated that Plaintiff had missed five appointments in 2012.[58] Plaintiff was given contact information and told to re-schedule if she could not attend appointments in the future.[59]

From July 6 to October 9, 2012, Plaintiff had regular visits with Dr. Vigil regarding Plaintiff's HIV and asthma, with associated lab work.[60] The visits were generally unremarkable and showed routine checkups and occasional, minor, acute medical issues.[61]

On October 18, 2012, Plaintiff visited the Ben Taub emergency room, complaining of a dry, unproductive cough and chest pain associated with coughing and stress.[62] Plaintiff reported that her chest pain was exacerbated by breathing and eating.[63] Additionally, Plaintiff complained that her hips were sore.[64]

Defendant denied Plaintiff's application at the initial and reconsideration levels.[65] Plaintiff requested a hearing before an administrative law judge ("ALJ") of the Social Security

---

[58]    See Tr. 298.

[59]    See Tr. 302.

[60]    See Tr. 781-804.

[61]    Id.

[62]    See Tr. 354.

[63]    See id.

[64]    See id.

[65]    See Tr. 65-68.

Administration.[66]  The ALJ granted Plaintiff's request and conducted a hearing on April 1, 2013.[67]

## C.  <u>Hearing</u>

Plaintiff and a vocational expert ("VE") testified at the hearing.[68]  Plaintiff was represented by an attorney.[69]

Plaintiff testified that she worked for Q Lube from 1999 to 2000 as a lube technician.[70]  Plaintiff was also employed for a year at Foot Locker between 2009 and 2010, working part-time.[71] Plaintiff explained that between those jobs, she was incarcerated for seven years for aggravated robbery with a deadly weapon.[72] Plaintiff reported that she attempted to work as a lube technician with both DJ Lube and Q Lube in 2010, but that she experienced pain and fatigue and was not able to continue in those positions.[73]

Plaintiff testified that she lived at home with her family, that she was thirty-four years old, and had a G.E.D.[74]  Plaintiff indicated that she no longer took illegal drugs and smoked "about

---

[66]    <u>See</u> Tr. 69.

[67]    <u>See</u> Tr. 35-54.

[68]    <u>See</u> <u>id.</u>

[69]    <u>See</u> Tr. 33.

[70]    <u>See</u> Tr. 37.

[71]    <u>See</u> Tr. 38.

[72]    <u>See</u> Tr. 38-39.

[73]    <u>See</u> Tr. 40, 42.

[74]    <u>See</u> <u>id.</u>

a pack a week."[75]

Plaintiff indicated that sitting for too long was painful because of her hip, and that she preferred to move around.[76] Plaintiff testified that she had difficulty finding a job with light exertion due to her criminal history.[77]

Plaintiff stated that mood disorder symptoms and chronic pain were side-effects of her HIV therapy.[78] She testified that she had not been hospitalized in the past year and that she had not been diagnosed with pneumonia or any other infection.[79] In addition to several drugs to treat her HIV, Plaintiff was additionally prescribed Zoloft for depression.[80] Plaintiff testified that she had not been hospitalized for any psychiatric issues.[81] Plaintiff stated that she was prescribed Vicodin for her hip pain, and said that she was going to be tested for rheumatoid arthritis.[82] Plaintiff indicated that her hip pain, on a one-to-ten scale, was a six on a good day and a seven or eight on a bad day, and that she

---

[75]    See Tr. 41-42.

[76]    See Tr. 43-44.

[77]    See Tr. 44.

[78]    See id.

[79]    See Tr. 45.

[80]    See id.

[81]    See Tr. 46.

[82]    See id.

had about three bad days per week.[83]  Plaintiff testified that she could walk for fifteen-to-twenty minutes, stand for thirty minutes, and sit for fifteen-to-twenty minutes without pain.[84]  Plaintiff stated that she treated her hip with a heating pad or Icy Hot "every three hours."[85]

Plaintiff testified that she slept during the day, and "tossed and turned" at night.  Plaintiff stated that she was not able to sleep much because of pain resulting from her reluctance to take her medication.[86]  Plaintiff testified that she had been attending Alcoholics Anonymous meetings for about a year, although she did not have a sponsor.[87]

The VE testified that Plaintiff's work as a lube technician was medium exertion, semi-skilled work, and her work as a sales representative was light and semi-skilled.[88]

The ALJ asked the VE whether a hypothetical individual who could sit six hours, stand and walk six hours, lift twenty pounds occasionally and ten pounds frequently would be able to find jobs in the regional or national economy.[89]  The VE testified that a

---

[83]    See Tr. 50.

[84]    See Tr. 51.

[85]    See Tr. 52.

[86]    See Tr. 48.

[87]    See Tr. 49.

[88]    See Tr. 41.

[89]    See Tr. 53.

hypothetical individual could find work as a ticket seller, storage facility rental clerk, or office helper.[90]

## D. Commissioner's Decision

On June 3, 2013, the ALJ issued an unfavorable decision.[91]  The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 21, 2012, and that Plaintiff had multiple severe impairments: HIV, asthma, hip arthralgia, and mood disorder.[92]  The ALJ found that Plaintiff's severe impairments, individually or collectively, did not meet or medically equal any of the listings of the regulations (the "Listings").[93]

The ALJ first evaluated Plaintiff's HIV under Listing 14.08K.[94] That Listing, addressing HIV infections, required repeated manifestations of an HIV infection resulting in significant, documented symptoms such as severe fatigue, fever, and involuntary weight loss, and causing marked impairment in at least one activity of daily living.[95]  The ALJ found that Plaintiff's HIV was asymptomatic, with no infections or required hospitalizations.[96]

---

[90]    See id.

[91]    See Tr. 17-28.

[92]    See Tr. 22.

[93]    See Tr. 22-25.  The Listings are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

[94]    See Tr. 22.

[95]    See id.

[96]    See Tr. 23.

13

The ALJ compared Plaintiff's asthma against Listing 3.03, Asthma, which required that a claimant have asthmatic bronchitis or attacks in spite of prescribed treatment and requiring physician intervention at least six times per year.[97] The ALJ found that Plaintiff's treatment records showed no attacks within the past year.[98]

The ALJ next considered Plaintiff's hip arthralgia against Listing 1.02, Major Dysfunction of a Joint, which required a plaintiff to demonstrate joint space narrowing, bone destruction, or ankylosis of the affected joint.[99] Plaintiff's hip was found to have mild joint degeneration, and was diagnosed with trochanteric bursitis.[100] However, the medical record did not establish the level of degeneration necessary to meet Listing 1.02.[101]

The ALJ evaluated Plaintiff's depression under Listing 12.04, Affective Disorders.[102] In order to meet the Listing's criteria, a plaintiff must show at least two of the following: marked impairment in activities of daily living, marked difficulties in social functioning, marked difficulties maintaining concentration,

---

[97] See id.

[98] See id.

[99] See id.

[100] See id.

[101] See id.

[102] See Tr. 24.

14

persistence, or pace, or repeated episodes of decompensation.[103]
The ALJ found that Plaintiff experienced mild limitations in daily
living, moderate difficulties in social functioning, and moderate
difficulties with concentration, persistence, or pace.[104] The ALJ
found that Plaintiff had no episodes of decompensation.[105]
Accordingly, the ALJ found that Plaintiff's depression failed to
meet Listing 12.04.[106]

Considering the record, the ALJ found that while Plaintiff may
have experienced some of the symptoms alleged, the degree of her
symptoms and limitations were not supported by objective
evidence.[107] In particular, the ALJ noted that Plaintiff had gone
for long periods without treatment for asthma beyond a personal
inhaler and did not present medical evidence of significant
functional limitation relating to her hip.[108] Additionally, the ALJ
noted that while Plaintiff testified that she quit working due to
her impairments, previous evidence she provided indicated that she
quit working because her hours were reduced.[109] The ALJ also noted
that Plaintiff's inability to secure a job due to her criminal

[103]   See id.

[104]   See Tr. 25.

[105]   See id.

[106]   See id.

[107]   See Tr. 26.

[108]   See id.

[109]   See id.

15

history was not a disabling factor.[110]

The ALJ found that Plaintiff was unable to perform past relevant work, but found that Plaintiff would be able to perform light-exertion, unskilled jobs with additional limitations, including not working around dust, fumes, odors or pulmonary irritants, and work limited to simple tasks when dealing with the public or co-workers.[111] The ALJ found that such jobs, including rental clerk and ticket seller, were available in the regional and national economy.[112] Thus, the ALJ found that Plaintiff had not been under a disability from February 21, 2012, through the date of the ALJ's decision.[113]

Plaintiff appealed the ALJ's decision, and, on October 31, 2013, the Appeals Council denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[114] After receiving the Appeals Council's denial, Plaintiff timely sought judicial review of the decision by this court.[115]

## II.  Standard of Review and Applicable Law

---

[110]    See id.

[111]    See Tr. 25-26.

[112]    See Tr. 27-28.

[113]    See Tr. 28.

[114]    See Tr. 1-6.

[115]    See Tr. 1, 3; Doc. 1, Pl.'s Compl.

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision. <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002).

**A.  <u>Legal Standard</u>**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); <u>see also</u> <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3); <u>see also</u> 42 U.S.C. § 423(d)(5)(A) <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no

> matter what the medical findings are; (2) a claimant will
> not be found to be disabled unless [s]he has a "severe
> impairment;" (3) a claimant whose impairment meets or is
> equivalent to [a Listing] will be considered disabled
> without the need to consider vocational factors; (4) a
> claimant who is capable of performing work that [s]he has
> done in the past must be found "not disabled;" and (5) if
> the claimant is unable to perform h[er] previous work as
> a result of h[er] impairment, then factors such as h[er]
> age, education, past work experience, and [RFC] must be
> considered to determine whether [s]he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20

C.F.R. § 404.1520.  The analysis stops at any point in the process

upon a finding that the claimant is disabled or not disabled.

Greenspan, 38 F.3d at 236.

**B.   Substantial Evidence**

The widely accepted definition of "substantial evidence" is

"that quantum of relevant evidence that a reasonable mind might

accept as adequate to support a conclusion." Carey v. Apfel, 230

F.3d 131, 135 (5th Cir. 2000).   It is "something more than a

scintilla but less than a preponderance." Id.   The Commissioner

has the responsibility of deciding any conflict in the evidence.

Id.   If the findings of fact contained in the Commissioner's

decision are supported by substantial record evidence, they are

conclusive, and this court must affirm.   42 U.S.C. § 405(g);

Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings

exist to support the Commissioner's decision should the court

overturn it.   Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir.

1988). In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless. Id.

A failure to controvert facts by competent summary judgment evidence may lead the court to accept them as undisputed. See Fed. R. Civ. P. 56(e). Summary judgment is not awarded by default because a motion is undisputed. See Ford-Evans v. Smith, 206 F. App'x 332, 334 (5th Cir. 2006); Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n. 3 (5th Cir. 1995); John v. State of Louisiana (Board of Trs. for State Colls. and Univs.), 757 F.2d 698, 708 (5th Cir. 1985). Summary judgment is appropriate only if the moving parties demonstrate the absence of a genuine issue of material fact and show that judgment is warranted as a matter of law. See Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 164 (5th Cir. 2006); Hetzel, 50 F.3d at 362 n. 3.

### III. Analysis

As noted, Plaintiff did not respond to Defendant's Motion for Summary Judgment, and the motion is therefore deemed unopposed. However, unopposed motions that dispose of litigation may not be automatically granted. See John, 757 F.2d at 708. The court will

consider Defendant's argument on its merits.  Defendant asserts in her motion that the ALJ's decision should be affirmed because the ALJ properly determined that Plaintiff was never under a disability during the period in question based on substantial evidence.  The court must review the record with an eye toward determining only whether the ALJ's decision is supported by more than a scintilla, but less than a preponderance of evidence.  See Carey, 230 F.3d at 135.

Here, the ALJ properly found that Plaintiff had several severe impairments, and compared those impairments against applicable Listings.  The ALJ found that none of Plaintiff's impairments, individually or in combination, met or equaled any Listing.  In making his determination, the ALJ clearly articulated his reasoning that the objective medical evidence and subjective complaints of each of Plaintiff's impairments did not rise to the level required by the Listings.  He then proceeded to step four, finding that Plaintiff could no longer perform her previous work, and step five, finding that Plaintiff was younger than forty-nine years of age, had at least a high school education, and that considering Plaintiff's age, education, and work experience, other jobs existed in significant numbers and that such positions were available in the regional and national economy.

The court finds more than a scintilla of evidence in support of the ALJ's decision.  Therefore, the court cannot overturn the

20

decision of the ALJ, who is given the task of weighing the evidence and deciding disputes. See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001). The court finds that the ALJ applied proper legal standards in evaluating the evidence and making his determination. Accordingly, Defendant's Motion for Summary Judgment should be granted.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 22nd day of December, 2014.

U.S. MAGISTRATE JUDGE